**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 5 2001**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ANTONIO GUEBARA,

Defendant - Appellant.

No. 00-3048
(D.C. No. CR-99-10057-03-MLB)
(D. Kansas.)

---

**ORDER AND JUDGMENT** *

---

Before **BRORBY** , **McKAY** , and **LUCERO** , Circuit Judges.

---

Antonio D. Guebara appeals his conviction for conspiracy to possess with

intent to distribute more than 1000 kilograms of a mixture containing a detectable

amount of marijuana, 21 U.S.C. §§ 841(a)(1), 846; four counts of possession with

intent to distribute a mixture containing a detectable amount of marijuana, 21

U.S.C. § 841(a)(1), 18 U.S.C. § 2; and managing a continuing criminal enterprise,

21 U.S.C. § 848.  He challenges the district court's denial of his motions to

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The Court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

suppress evidence related to his March 23, 1997, traffic stop, to order separate trials, and to declare a mistrial. Furthermore, he argues that his conviction should be vacated because the district court unlawfully revoked his bond. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

## I. Motion to Suppress

On March 23, 1997, Sedgwick County Sheriff's Deputy Keith Allen was traveling in an unmarked police vehicle along the Kansas Turnpike with an off-duty police officer. En route to police training in Topeka, Deputy Allen looked over at the driver of an Isuzu Rodeo and recognized appellant's face from mug shots he had seen in the squad room. Deputy Allen called the Kansas Turnpike Authority to relay the location of appellant, who he thought was a wanted drug trafficker, and then called the records section of the Sedgwick County Sheriff's Department. From the Sheriff's Department, he learned that although appellant had no arrest warrants, he was driving with a suspended license; furthermore, the Isuzu Rodeo was registered to Andrew Guebara, who did have active warrants against him. Deputy Allen contacted the Turnpike Authority again and relayed this additional information. At some point, he saw that there was a passenger in the vehicle, although he did not identify him.

Meanwhile, Kansas Highway Patrol Master Trooper Jim Brockman was dispatched to assist Deputy Allen. He was told only that the vehicle might be

occupied by wanted felon Andrew Guebara. Upon locating the vehicle, Trooper

Brockman ran the license plate, learned that it was in fact registered to Andrew

Guebara, stopped the vehicle, and approached appellant. The trooper asked to see

his driver's license as well as the passenger's identification, which were not

produced. As he questioned them to determine their identity, Trooper Brockman

detected an overpowering odor of marijuana. The occupants were ordered to exit

the vehicle, and a search revealed a suitcase containing marijuana. Appellant and

passenger George Guebara were arrested.

The district court denied appellant's motion to suppress all evidence

stemming from the March 23, 1997, traffic stop. In reviewing that denial, we

accept the district court's factual findings unless they are clearly erroneous,

"view[ing] the evidence in the light most favorable to the government and the

district court's findings." United States v. Anderson, 114 F.3d 1059, 1063 (10th

Cir. 1997). The ultimate determination of reasonableness under the Fourth

Amendment is a question of law to be reviewed de novo. United States v. Toro-

Pelaez, 107 F.3d 819, 824 (10th Cir. 1997).

Traffic stops are seizures under the Fourth Amendment, properly analyzed

as investigative detentions that must be supported by a reasonable, articulable

suspicion that criminal activity is afoot. See Anderson, 114 F.3d at 1063; United

States v. Sokolow, 490 U.S. 1, 7 (1989). As a general matter, an investigative

detention must be justified at its inception and reasonably related in scope to the circumstances that justified the stop in the first place. United States v. Sharpe, 470 U.S. 675, 682 (1985). With respect to the latter requirement, we explained in United States v. Salzano that

> the officer must have an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring in order to justify detaining an individual for a period of time longer than that necessary to review a driver's license and vehicle registration, run a computer check, determine that the driver is authorized to operate the vehicle, and issue the detainee a citation.

158 F.3d 1107, 1111 (10th Cir. 1998) (quotations omitted).

Knowledge of facts justifying a traffic stop commonly is held by a single police officer; in limited circumstances, however, a stop may be justified by the collective knowledge of all of the officers involved in the stop. United States v. Merritt, 695 F.2d 1263, 1268 (10th Cir. 1982) ("In assessing whether the police . . . had sufficient justification to make an investigatory stop we must, of course, look to the knowledge of all the police involved in this criminal investigation . . . ."). "It is well-established that when an order to stop or arrest a suspect is communicated to officers in the field, the underlying facts constituting probable cause or reasonable suspicion need not be communicated, so long as the individual or agency issuing the order can justify the intrusion on Fourth Amendment rights." United States v. Shareef, 100 F.3d 1491, 1503 n.4 (10th Cir. 1996) (citation omitted).

-4-

Appellant contends that the stop was not justified at its inception because "[w]hen Trooper Brockman stopped the Defendant's vehicle he had been informed only that Andrew Guebara had an outstanding felony warrant and that he might be in the vehicle." (Appellant's Br. at 13.) We disagree. Trooper Brockman was acting on the strength of the dispatcher's well-informed directive to assist Deputy Allen in effectuating the stop. The dispatcher knew appellant was driving the vehicle, that he had a suspended driver's license, and that the vehicle was registered to wanted felon Andrew Guebara. These facts easily evoked suspicion that criminal wrongdoing was afoot, and we can not conclude that the suspicion was unreasonable.

Furthermore, we disagree with appellant's contention that the investigatory detention exceeded the scope of the underlying justification. The stop lasted no longer than necessary to identify the occupants of the vehicle before Trooper Brockman detected the strong, overpowering odor of marijuana coming from inside. Under the circumstances, the search of the vehicle was justified, see United States v. Downs, 151 F.3d 1301, 1303 (10th Cir. 1998). The district court properly denied appellant's motion.

## II. Motion for Separate Trials

Of the fifteen defendants charged in the Second Superseding Indictment, only two, appellant and Alphonso Luna, were actually tried. Luna, who was

-5-

charged with conspiracy and possession with intent to distribute a substance containing a detectible amount of marijuana, faced the obstacle of explaining how his fingerprints ended up on three bricks of marijuana found in a co-defendant's apartment. His explanation was that he innocently handled the wrapped marijuana when he visited appellant's home in Texas.

On the morning trial was to begin, and after the jury had been sworn, appellant made a motion for separate trials because, he claimed, Luna's defense was antagonistic to his own. Appellant's counsel expressed his concern: "Mr. Luna is going to testify . . . that he's seen Mr. Guebara in control of large quantities of marijuana. I believe that the testimony is going to indicate that Mr. Guebara was not only conspiring to distribute this marijuana, but was directing the distribution on that." (Appellant's Br. Ex. H at 12.) Appellant did not present a defense but rather relied on cross-examination of the government's witnesses; according to appellant, cross-examination exposed that the testimony of those witnesses was self-serving, as it was given pursuant to plea agreements contemplating their assistance. (Appellant's Br. at 18.)

In ruling on the motion, the district court concluded the risk of prejudice resulting from joint trial was low given the "mountain of evidence" that would be presented "to the effect that [appellant] is a kingpin in a substantial marijuana distribution ring" (Appellant's Br. Ex. H at 19). The court expressed doubt that

the defenses were mutually antagonistic because appellant did not plan to present a defense but rather intended to rely on the presumption of his innocence. Finally, the court planned to instruct the jury to "give separate consideration to the evidence as it pertains to each defendant." ( Id. at 22.) The joint trial proceeded, and Luna was acquitted.

Joint trials for defendants who are indicted together are preferred because "[t]hey promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." Zafiro v. United States , 506 U.S. 534, 537 (1993) (quotation omitted); see Fed. R. Crim. P. 8(b). Nevertheless, severance may be appropriate "[i]f it appears that defendant or the government is prejudiced by a joinder of . . . defendants . . . for trial together." Fed. R. Crim. P. 14. To make a showing of "prejudice," a defendant must show that there is a serious risk that a joint trial would compromise a specific trial right, or prevent the jury from making a reliable judgment about guilt or innocence. Zafiro , 506 U.S. at 539. District courts are to consider the circumstances in each case to evaluate the "risk of prejudice" and fashion "any remedy that may be necessary," which may consist of an appropriate jury instruction. Id. at 540–41.

At oral argument, appellant's counsel recognized that the "standard of review for matters of severance is pretty strict." Specifically, he can not prevail unless "there is an affirmative showing of abuse of discretion." United States v.

Morales , 108 F.3d 1213, 1219 (10th Cir. 1997).  Appellant further recognizes that it does not suffice to show that severance would have increased the probability of his acquittal.  See United States v. Dirden , 38 F.3d 1131, 1140 (10th Cir. 1994). Rather, he must make a "strong showing" of real prejudice.  Id.

Assuming, without deciding, that Luna presented an antagonistic defense, we conclude appellant has not made a sufficient showing of real prejudice.  In making its determination, the district court correctly anticipated that the evidence showing appellant was the leader of a drug conspiracy would be overwhelming. In addition to testimony of police officials, including undercover investigators, the evidence consisted of the testimony of appellant's criminal associates. [1] Given the "mountain" of other evidence against appellant as well as the district judge's cautionary jury instruction, we can not say that the joint trial compromised a specific trial right—namely, the government's obligation to prove appellant's guilt beyond a reasonable doubt—or that the jury was prevented from making a

---

[1] ( See, e.g. , IV R. at 104–25 (testimony of William Goddard that appellant hired him to transport drugs);  id. at 139, 137–54 (testimony of Tony Dawn Falcon that appellant was a distributor of marijuana and cocaine);  id. at 230, 232 (testimony of Eric Day that appellant supplied him and others with cocaine and marijuana for redistribution on a regular basis);  id. at 237 (Day's testimony casting appellant as a leader in a drug conspiracy);  id. at 280–81 (testimony of David Nunn that he purchased large quantities of marijuana and cocaine from appellant for resale during a period of several years); V  id. at 462–64 (testimony of Charles Brunstetter that he purchased a truck from appellant and paid for it by making marijuana deliveries for him).)

reliable judgment about appellant's guilt or innocence. The district court did not abuse its discretion in denying appellant's motion.

### III. Motion for a Mistrial

At trial, the government played secretly recorded conversations for the jury. In the recording, a co-defendant stated, "This kid was acting like he wasn't going to . . . pay Tony [appellant] for a whole pound of crystal." (Appellant's Br. Ex. I at 1.) "Crystal" was a reference to the controlled substance methamphetamine. Appellant moved for a mistrial, claiming that the recording violated Federal Rule of Evidence 404(b) because he was not charged for a crime involving methamphetamine. The court denied the motion and later instructed the jury to disregard evidence of uncharged crimes.

In United States v. Gabaldon , 91 F.3d 91, 93–94 (10th Cir. 1996), we observed that

> [w]hile the Federal Rules of Criminal Procedure offer little guidance on when judges should grant mistrial motions, we have focused on "whether . . . [the defendant's] right to a fair and impartial trial was impaired." . . . Both motions for mistrial and new trial call for an examination of the prejudicial impact of an error or errors when viewed in the context of an entire case. This court reviews the trial court's ruling on such motions under an abuse of discretion standard.

Id. (quoting United States v. Torres , 959 F.2d 858, 860 (10th Cir. 1992) (further quotation omitted) (first two alterations in Gabaldon )).

Appellant concedes that the methamphetamine reference was "an oversight"

by the government (Appellant's Br. at 22); viewed in context of the entire case, the prejudicial impact of the government's "oversight" was not substantial. It is not clear that the jury even knew to what the term "crystal" referred. Although the district court did not immediately instruct the jury to disregard the statement, the court did not do so to avoid calling the jury's attention to the statement. (Id. Ex. J. at 400.) "A proper jury instruction was given at the end of evidence" (Appellant's Br. at 22), and as previously discussed, the evidence against appellant was overwhelming for the crimes with which he was charged. We conclude that the district court did not abuse its discretion in denying appellant's motion for a mistrial.

## IV. Bond Revocation

Prior to trial, on September 21, 1999, appellant tested positive for cocaine use in violation of the conditions of his pretrial release. A magistrate judge revoked and then reinstated his bond under electronic monitoring and twenty-four-hour lock down status. On December 30, 1999, Guebara threatened to kill the "[expletive] judge," and on January 5, 2000, he removed the electronic monitoring device from his ankle. (Appellant's Br. Ex. G.) As a result, the district court revoked appellant's bond and remanded him into custody. The record does not show that the court made specific findings after a formal hearing, nor does it show that appellant objected to the bond revocation procedure.

Appellant claims that the possibility of entering into a plea agreement with the government evaporated once bond was revoked for a second time; had he remained out of custody, the government would have agreed to recommend a downward sentencing departure in exchange for his substantial assistance.

Normally, we review legal aspects of bond revocations de novo, United States v. Dudley, 62 F.3d 1275, 1277 (10th Cir. 1995), but in this case, our review is limited to plain error because appellant failed to raise and preserve his objection during the revocation proceedings. "Under [plain error] review, relief is not warranted unless there has been (1) error, (2) that is plain, and (3) affects substantial rights. . . . An appellate court should exercise its discretion to correct plain error only if it seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." Jones v. United States, 527 U.S. 373, 389 (1999) (citations and quotation omitted).

Bond revocations are governed by 18 U.S.C. § 3148(b), which states:

The judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer—
    (1) finds that there is—
        (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or
        (B) clear and convincing evidence that the person has violated any other condition of release; and
    (2) finds that—
        (A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or

-11-

(B) the person is unlikely to abide by any condition or combination of conditions of release.

Section 3148(b) is silent about the nature of the required hearing. By contrast, 18 U.S.C. § 3142, which governs detention hearings, states that the detainee "shall be afforded an opportunity to testify, to present witnesses, to cross-examine witnesses who appear at the hearing, and to present information by proffer or otherwise"; furthermore, § 3142(i) requires that "[i]n a detention order . . ., the judicial officer shall . . . include written findings of fact and a written statement of the reasons for the detention."

Appellant questions the adequacy of the district court's bond revocation hearing and findings and seeks to "be placed back into the position he was in before the district court improperly revoked his bond." (Appellant's Br. at 26.) We assume, without deciding, that the absence of a formal hearing or specific factual findings constitutes error. Cf. United States v. Davis, 845 F.2d 412, 415 (2d Cir. 1988). We nevertheless conclude that the procedural error does not warrant relief because it did not seriously affect the fairness, integrity, or public reputation of the proceedings. The revocation was amply supported by the evidence before the court; evidence that appellant cut his monitoring device and that he tested positive for cocaine use would have supported findings that he had violated a condition of release and that he was unlikely to abide by any condition of release.

## V.  Conclusion

The district court's judgment is       **AFFIRMED** .

Entered for the Court

Carlos F. Lucero
Circuit Judge