**UNITED STATES of America,
Plaintiff,**

v.

**Rudolph James MAIO, Defendant.**

**No. 00–40024–25–SAC.**

United States District Court,
D. Kansas.

Nov. 26, 2001.

Anthony W. Mattivi, Office of U.S. Attorney, Topeka, KS, for U.S.

Barbara K. Huff, Lawrence, KS, for Rudolph James Maio.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

This case comes before the court on defendant Rudolph Maio's motion to suppress vehicle search (Dk.724). No defendants have specifically joined in this motion, and none has standing to do so. Maio's motion seeks to suppress all physical evidence seized from the pickup truck he was driving on February 22, 2000, as well as from the Honda motorcycle hauled in the bed of that pickup, all statements he made at the scene or soon thereafter, and all observations of law enforcement officers relating to the stop.

### Facts

On February 22, 2000, defendant Maio was stopped in Oklahoma for speeding in a construction zone by Trooper Lambert, who had been instructed to stop the defendant for any traffic violation he observed him committing. The troopers had received information from DEA agents that defendant was involved in the trafficking of controlled substances with co-defendants Timothy Cline and John Keaney.

When Trooper Lambert inquired about the ownership of the vehicle, defendant Maio admitted that he did not own the truck or the motorcycle he was hauling, but stated that he had permission to possess them. Defendant had no written documentation so indicating, and appeared to Trooper Lambert to be nervous and fidgety, as did the only passenger, Shirley Waterbury.

Trooper Lambert then asked for consent to search the truck. Maio replied that he could search the cab of the truck, but not the motorcycle. Trooper Lambert then called the nearest dog handler, and had the defendant drive to nearby troop headquarters where the dog handler met them approximately 30 minutes later. The dog alerted on the saddlebags of the motorcycle, which were locked. Defendant had no key so Trooper Lambert forced them open and found $34,140 in cash in the motorcycle's baggage compartments. Upon opening the heat-sealed plastic bags containing the money, the officer smelled marijuana. Defendant was then arrested, was *Mirandized*, and waived his *Miranda* rights.

Defendant alleges that the initial traffic stop was invalid, that the search and detention exceeded the scope of the traffic stop, that no consent, probable cause, or other exception applies to justify the search of the motorcycle, and that defendant's statements are fruit of the poisonous tree.

### Analysis

#### I. Initial Stop

Defendant challenges the legality of the initial traffic stop, alleging that he was driving under the legal, although over the posted, speed limit at the time, that he was driving in a manner which was reasonable and prudent given the existing road and weather conditions, and that he was not driving carelessly.

The government denies each of the above contentions, and further contends that even if there had been no basis for a traffic stop, the initial stop was valid because law enforcement officers had reasonable suspicion to believe that Maio was involved in illegal drug activity.

■ The Fourth Amendment protects individuals from unreasonable searches and seizures. *See* U.S. Const. amend. IV. An unconstitutional seizure may render an otherwise constitutional search invalid under the Fourth Amendment if the search resulted from the illegal seizure or detention. *United States v. Miller,* 84 F.3d 1244, 1250 (10th Cir.), *cert. denied,* 519 U.S. 985, 117 S.Ct. 443, 136 L.Ed.2d 339 (1996), *overruled on other grounds, United States v. Holland,* 116 F.3d 1353, 1357–59 (10th Cir.), *cert. denied,* 522 U.S. 902, 118 S.Ct. 253, 139 L.Ed.2d 181 (1997), *overruled in part on other grounds, Bousley v. United States,* 523 U.S. 614, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). As established by Supreme Court precedent, there are three general types of police-citizen encounters: "(1) consensual encounters which do not implicate the Fourth Amendment; (2) investigative detentions which are Fourth Amendment seizures of limited scope and duration and must be supported by a reasonable suspicion of criminal activity; and (3) arrests, [which are] the most intrusive ... and [are] reasonable only if supported by probable cause." *United States v. Davis,* 94 F.3d 1465, 1467–68 (10th Cir.1996) (citations omitted).

## A. *Reasonable Suspicion of Criminal Activity*

The government argues the initial stop was predicated on a reasonable belief that the occupants of the vehicle were suspects in the trafficking of controlled substances. Thus, the stop can be supported as an investigative stop on the basis of the Trooper's reasonable suspicion that the occupants were involved in criminal activity. *See United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (*citing Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

■ Reasonable suspicion is one that would " 'warrant a man of reasonable cau-

tion in the belief' that [a stop] was appropriate." *Terry,* 392 U.S., at 22, 88 S.Ct., at 1880, *quoting Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

■ "The officer [making a Terry stop] ... must be able to articulate something more than an 'inchoate and unparticularized suspicion or "hunch." ' [*Terry,* 392 U.S.,] at 27 [88 S.Ct., at 1883]. The Fourth Amendment requires 'some minimal level of objective justification' for making the stop. *INS v. Delgado,* 466 U.S. 210, 217 [104 S.Ct. 1758, 1763, 80 L.Ed.2d 247] (1984). That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence. We have held that probable cause means 'a fair probability that contraband or evidence of a crime will be found,' [*Gates,* 462 U.S., at 238, 103 S.Ct., at 2332], and the level of suspicion required for a *Terry* stop is obviously less demanding than for probable cause."

*United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). The court considers both the quantity and quality of the evidence when evaluating whether there is reasonable suspicion.

■ The government bears the burden to show that an officer possessed articulate reasonable suspicion. *United States v. Carhee,* 27 F.3d 1493, 1496 and n. 2 (10th Cir.1994). Police officers cannot rely upon an "unparticularized suspicion or hunch." *Brown v. Texas,* 443 U.S. 47, 52 n. 2, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); *United States v. Fernandez,* 18 F.3d 874, 878 (10th Cir.1994). Whether an officer possessed the requisite articulate suspicion depends on the totality of the circumstances. *United States v. Salzano,* 149 F.3d 1238, 1242 (10th Cir.1998), *opinion amended and superseded at* 158 F.3d 1107 (10th Cir.1998).

Here, Trooper Lambert had no personal knowledge or information leading to a reasonable suspicion that Maio was involved in criminal activity. Instead, any such suspicion arose solely by virtue of the information possessed by and/or conveyed to Trooper Lambert by the DEA.

■ "Knowledge of facts justifying a traffic stop commonly is held by a single police officer; in limited circumstances, however, a stop may be justified by the collective knowledge of all of the officers involved in the stop." *United States v. Guebara,* 2001 WL 617609 at \*2, 15 Fed. Appx. 584, 586–87 (June 5, 2001) (Table). This collective knowledge rule applies where an officer makes an investigatory stop based in part on information or directions from other law enforcement officials. *United States v. Merritt,* 695 F.2d 1263, 1268 & n. 9 (10th Cir.1982), *cert. denied,* 461 U.S. 916, 103 S.Ct. 1898, 77 L.Ed.2d 286 (1983).

■ The Tenth Circuit has applied the collective knowledge analysis in determining whether there was reasonable suspicion to make an investigatory stop, *see Guebara;* as well as in determining whether probable cause for an arrest exists, *see Merritt,* 695 F.2d at 1268, n. 9. In determining whether reasonable suspicion exists, the court must look at the totality of the circumstances and consider the collective knowledge and experience of the officers involved. *See United States v. Jones,* 234 F.3d 234, 241 (5th Cir.2000). An investigatory stop based on a reasonable suspicion of criminal activity can be based on the collective knowledge of officers involved in an investigation. *See United States v. Nafzger,* 974 F.2d 906 (7th Cir. 1992); *United States v. Shaw,* 701 F.2d 367, 376–77 n. 4 (5th Cir.1983), *cert. denied,* 465 U.S. 1067, 104 S.Ct. 1419, 79 L.Ed.2d 744 (1984).

■ It is well-established that when an order to stop or arrest a suspect is communicated to officers in the field, the underlying facts constituting probable cause or reasonable suspicion need not be communicated, so long as the individual or agency issuing the order can justify the intrusion on Fourth Amendment rights. *United States v. Hensley,* 469 U.S. 221, 231, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). The court thus examines whether Agent Ryan, the DEA agent who relayed the information to Trooper Lambert, is able to satisfy the *Terry* "reasonable suspicion" standard. *See United States v. Hensley,* 469 U.S. 221, 232–33, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985).

DEA Special Agent Robert Ryan testified that he was aware of the following facts at the time Maio was stopped: 1) Ryan was involved in a wide-ranging, multi-state undercover DEA operation to detect trafficking of controlled substances, which involved Timothy Cline and others; 2) pursuant to information learned from authorized wiretaps of Timothy Cline's business telephone on February 16, 2000, John Keaney called for Timothy Cline on February 16, 2000, and when Cline was unavailable, Keaney said he needed to talk to Cline personally and left three numbers where he could be reached, all of which the DEA determined to be numbers for individuals known to be involved in prior narcotics investigations; 3) when Cline returned Keaney's call, Keaney said he was sending a person named "Shakey" or "Bubba" from El Paso, Texas to meet with Cline and conduct a transaction for "15 to 17," "negotiable in either form," which Ryan believed to be the exchange of drugs for money; 3) a person who identified himself as "Shakey" called Cline on February 16, 2000, said he was driving John's truck, and wanted to meet with Cline at Cline's home; 4) on February 22, 2000, "Shakey" called Cline again and said he would arrive at Cline's business in one and one half hours; 5) surveillance of Cline's

business one and one half hours after that telephone call revealed defendant's arrival on February 22nd in a red and white pick-up truck; 5) investigation revealed that the pick-up truck was registered to another individual involved in a drug-related investigation and that the motorcycle in the bed of the truck was registered to John Keaney from El Paso, Texas; 6) John Keaney had a criminal history, was known to the DEA, and Ryan believed Keaney was involved in the trafficking of illegal drugs; 7) the occupants of the pick-up truck entered Cline's business, remained there for only 10–15 minutes during which time no work was done on the truck or motorcycle, and upon leaving Cline's business proceeded south into Oklahoma.

 Defendant alleges that the above facts recite only innocent acts which relate to nothing but motorcycles. However, the court gives deference to a "law enforcement officer's ability to distinguish between innocent and suspicious actions," *United States v. Wood,* 106 F.3d 942, 946 (10th Cir.1997), and notes that reasonable suspicion may be founded upon factors consistent with innocent travel. *Id.* (quoting *United States v. Lee,* 73 F.3d 1034, 1039 (10th Cir.1996)).

Ryan's testimony was clear, credible, and unrefuted. Based upon these facts and the inferences reasonably flowing from them, and the experience of agent Ryan, it was reasonable for Ryan to suspect that Maio was involved in some manner with Cline in drug trafficking. Given the telephone conversations legally wiretapped, and the course of events, it was reasonable to suspect that Cline may have been using his motorcycle shop as a cover for drug trafficking, and that Maio may have had drug-related items or currency in the vehicle or motorcycle he was hauling at the time of the stop. That Trooper Lambert did not actually observe any criminal activity is irrelevant as "the facts are measured against an objective reasonable man standard, not the subjective impressions of the particular officer." *United States v. Mallides,* 473 F.2d 859, 861 (9th Cir.1973). Under these circumstances, the court finds that Trooper Lambert and Agent Ryan had a "particularized and objective basis" for making the investigatory stop of Maio's vehicle.

### B. Traffic stop

The parties raise multiple and interesting issues regarding whether Trooper Lambert would have been justified in stopping defendant solely on the basis of a traffic stop in the absence of reasonable suspicion, but in light of the court's findings above, it is unnecessary to reach such issues.

## II. Scope of the Stop

Defendant next asserts that even if the initial stop of defendant's vehicle was legitimate, the detention was not "reasonably related in scope to the circumstances which justified the interference in the first place," as is required under *Terry,* 392 U.S. at 20, 88 S.Ct. 1868.

 "Generally, an investigative detention must 'last no longer than is necessary to effectuate the purpose of the stop.'" *United States v. Patten,* 183 F.3d 1190, 1193 (10th Cir.1999) (quoting *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)). It must be temporary, and its scope must be carefully tailored to its underlying justification. *United States v. Gutierrez–Daniez,* 131 F.3d 939, 942 (10th Cir.1997), *cert. denied,* 523 U.S. 1035, 118 S.Ct. 1334, 140 L.Ed.2d 494 (1998); *United States v. Wood,* 106 F.3d 942, 945 (10th Cir.1997). Upon issuing a citation or warning and determining the validity of the driver's license and right to operate the vehicle, the officer usually

must allow the driver to proceed without further delay. *Patten,* 183 F.3d at 1193; *United States v. Anderson,* 114 F.3d 1059, 1064 (10th Cir.1997).

A longer detention for additional questioning is permissible under two circumstances: (1) the officer has an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring; or (2) the initial detention changes to a consensual encounter. *United States v. Hunnicutt,* 135 F.3d 1345, 1349 (10th Cir. 1998).

### A. Consensual Encounter

■■■■ If an encounter between a police officer and a motorist is consensual, the Fourth Amendment ban on unreasonable searches and seizures does not come into play. *See United States v. Walker,* 933 F.2d 812, 816–17 (10th Cir.1991), *cert. denied,* 502 U.S. 1093, 112 S.Ct. 1168, 117 L.Ed.2d 414 (1992). However, retention of a motorist's driver's license and/or other pertinent documents by the officer during any questioning precludes a conclusion of consent until the documents are returned. *See id.* at 817. The Tenth Circuit has consistently held "that an encounter initiated by a traffic stop may not be deemed consensual unless the driver's documents have been returned to him." *United States v. Gonzalez–Lerma,* 14 F.3d 1479, 1483 (10th Cir.), *cert. denied,* 511 U.S. 1095, 114 S.Ct. 1862, 128 L.Ed.2d 484 (1994); *accord United States v. Lambert,* 46 F.3d 1064, 1068 (10th Cir.1995).

Trooper Lambert testified that he had no recall of when he returned Maio's driver's license to him. No other testimony on this issue was given. Because the government failed to establish that Maio's driver's license was returned to him at any time at the scene of the stop, Maio's detention cannot be justified based upon a consensual encounter.

### B. Reasonable Suspicion

■■■■ Maio's extended detention may nonetheless have been lawful if the officer had a reasonable and articulable suspicion of criminal activity. *See United States v. Turner,* 928 F.2d 956, 959 (10th Cir.1991). Here, for the reasons set forth above in addressing the initial stop, the court finds that Trooper Lambert had the requisite individualized, reasonable suspicion to expand the scope of the detention. Maio's detention was reasonably related in scope to the circumstances which justified the interference in the first place, which were not based solely upon a traffic violation. But even in the absence of Agent Ryan's reasonable suspicion that defendant was involved in drug trafficking, defendant has not shown that the scope of his detention exceeded the bounds of the law.

■■■ A variety of factors may contribute to the formation of an objectively reasonable suspicion of illegal activity. Among those factors that have justified further questioning are having no proof of ownership of the vehicle, having no proof of authority to operate the vehicle, and inconsistent statements about destination. *See United States v. Jones,* 44 F.3d 860, 872 (10th Cir.1995); *Gonzalez–Lerma,* 14 F.3d at 1483–84; *United States v. Pena,* 920 F.2d 1509, 1514 (10th Cir.1990), *cert. denied,* 501 U.S. 1207, 111 S.Ct. 2802, 115 L.Ed.2d 975 (1991). In particular, a driver's inability to offer proof of ownership or authorization to operate the vehicle has figured prominently in many Tenth Circuit cases upholding further questioning. *See United States v. Horn,* 970 F.2d 728, 732 (10th Cir.1992); *United States v. Turner,* 928 F.2d 956, 959 (10th Cir.), *cert. denied,* 502 U.S. 881, 112 S.Ct. 230, 116 L.Ed.2d 187 (1991); *United States v. Arango,* 912 F.2d 441, 447 (10th Cir.1990), *cert. denied,* 499 U.S. 924, 111 S.Ct. 1318, 113 L.Ed.2d 251 (1991); *see also United States v. Fer-*

*nandez,* 18 F.3d 874, 879 (10th Cir.1994) (The "defining characteristic of our traffic stop jurisprudence is the defendant's lack of ... some ... indicia of proof to lawfully operate and possess the vehicle in question, thus giving rise to objectively reasonable suspicion that the vehicle may be stolen.")

Here, Trooper Lambert gave credible and uncontradicted testimony that when he stopped the vehicle defendant was driving, defendant had no proof of ownership or of permission to operate the vehicle, defendant avoided eye contact and rubbed his leg, and defendant told him that the purpose of the trip was to get a motorcycle for a friend from Baxter Springs, Kansas, where Cline's business is located. Trooper Lambert testified that during drug trafficking ventures it is common for vehicles not to be driven by their owners, and described defendant as nervous and fidgety.

Trooper Lambert then questioned the passenger who appeared to be "extremely nervous." She said they had taken the motorcycle from El Paso, Texas to Indiana for a show, thus giving an answer inconsistent with defendant's as to the purpose of the trip. It is uncontradicted that defendant had no proof of ownership of the vehicle, no proof of authority to operate the vehicle, and that he and his passenger gave inconsistent statements about their purpose or destination. Such events would create a reasonable suspicion that illegal activity may be afoot.

 Maio further alleges that the length of the detention exceeded the permissible bounds of *Terry.* The sole testimony as to the length of the detention was given by Trooper Lambert, who stated that he called the canine unit after stopping Maio while still in the construction zone, and the unit arrived within 15–30 minutes after he called.

Similar waiting periods have withstood challenge. *See United States v. Villa–Chaparro,* 115 F.3d 797, 802–03 (10th Cir.), *cert. denied,* 522 U.S. 926, 118 S.Ct. 326, 139 L.Ed.2d 252 (1997) (extended detention of almost forty minutes spent waiting for a drug-sniffing dog did not violate the Fourth Amendment); *United States v. Garcia,* 52 F.Supp.2d 1239 (D.Kan.1999) (finding a delay of 40 minutes not unreasonable where supported by reasonable suspicion, even where the driver was being detained against his will.); *United States v. Alpert,* 816 F.2d 958 (4th Cir.1987) (upholding 50 minute detention); *United States v. Hardy,* 855 F.2d 753, 760 (11th Cir.1988); *United States v. $64,765.00,* 786 F.Supp. 906, 912 (D.Or.1991); *Cf. United States v. Borys,* 766 F.2d 304, 313 (7th Cir.1985) (75 minute detention was "at the outer bounds of the Constitution"); *United States v. Place,* 462 U.S. 696, 709, 103 S.Ct. 2637, 77 L.Ed.2d 110(1983) (declining to adopt "outside time limitation" for permissible *Terry* stop, but admonishing prior to *Sharpe* that 90 minutes is probably too long for a *Terry* stop); *United States v. Sharpe,* 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985) (holding that in distinguishing a true investigative stop from a *de facto* arrest, the court must not adhere to "rigid time limitations" or "bright line rules.")

The court finds that Trooper Lambert and DEA agents collectively had the particularized and objective suspicion necessary to lengthen the *Terry* stop. Therefore, they did not act unconstitutionally in questioning the defendant and holding the defendant's vehicle approximately thirty minutes while awaiting the arrival of the canine unit. *Cf. United States v. Brown,* 24 F.3d 1223, 1226 (10th Cir.1994) (finding that thirty-minute investigative detention of defendant and his car for purpose of conducting canine sniff did not violate the Fourth Amendment); *See United States v.*

*Toledo,* 139 F.3d 913, 1998 WL 58117, *4 (10th Cir. Feb.12, 1998) (Table), *cert. denied,* 524 U.S. 932, 118 S.Ct. 2333, 141 L.Ed.2d 706 (1998).

■ Defendant Maio additionally argues that Trooper Lambert exceeded the permissible scope of the traffic stop by asking him certain intrusive questions unrelated to that stop. Trooper Lambert testified that he asked Maio about the purpose of his travel, about ownership of the vehicle and the motorcycle, and "probably" asked whether he had any contraband or anything illegal in the vehicle.

Here, by the time Trooper Lambert asked about contraband, he had reasonable suspicion that Maio was engaged in criminal activity, justifying the length of the detention and the intrusiveness of the questions asked. The court need not and thus will not determine herein whether these questions exceed the permissible scope of a traffic stop in the absence of reasonable suspicion of criminal activity.

■ Defendant additionally challenges Trooper Lambert's order to the defendant to move his vehicle from the interstate to nearby troop headquarters. Trooper Lambert testified that he made this decision for safety reasons because they were stopped in heavy traffic in a construction zone.

Defendant challenges this testimony of Trooper Lambert's with an affidavit from the construction project supervisor, Charles Gercie. Gercie states that the shoulder, or 15 foot "break down" lane, for west-bound traffic was clear from any construction equipment at the time of the stop. (*See* Dk. 1051). Gercie's affidavit confirms, however, that there was construction ongoing in the area at the time of the stop, that the east-bound lanes of the four lane road were closed to traffic, and all traffic was diverted to the west-bound lanes.

Trooper Lambert stopped defendant in the west-bound lanes at a point where the two-way traffic had been separated by portable concrete barriers because of construction in the area. His decision to move to another location for safety reasons has not been shown to have been unreasonable or pretextual, and his ordering defendant to move his vehicle under these circumstances does not change the character of the stop from an investigative detention to an arrest.

Based upon the same reasoning set forth above in examining the initial stop, coupled with the host of Tenth Circuit cases noted above, the court finds that the detention was supported by reasonable and articulable suspicion that Maio was engaged in criminal activity at the time of the stop.

### III. Post Arrest Statements

Maio alleges that any statements he made after his "unconstitutional seizure" must be suppressed as fruit of the poisonous tree, pursuant to *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Given the court's findings above that the seizure was within the bounds of constitutionality, this argument fails.

■ Defendant additionally contends that his statements were involuntary and were not made pursuant to a knowing and voluntary waiver, as is required under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Defendant did not introduce or solicit any evidence in support of this assertion at the evidentiary hearing, however, and makes no argument in support of this contention in his briefs. (See Dks. 725, 948, 1051, 1073). The court therefore finds such argument is waived.

■ Even absent a waiver, Maio's contention would not succeed. A suspect who has been informed of his *Miranda* rights

"may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly, and intelligently." *Miranda,* 384 U.S. at 444, 86 S.Ct. 1602. The government bears the burden of proving by a preponderance of the evidence that the defendant's waiver of rights was voluntary. *United States v. Toro–Pelaez,* 107 F.3d 819, 825 (10th Cir.), *cert. denied,* 522 U.S. 845, 118 S.Ct. 129, 139 L.Ed.2d 78 (1997); *Colorado v. Connelly,* 479 U.S. 157, 168–69, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).

■ To prove a voluntary waiver of Fifth Amendment rights, the government must establish: (1) that the waiver was the product of free and deliberate choice rather than intimidation, coercion, or deception; and (2) that the waiver was made in full awareness of the nature of the right being waived and the consequences of waiving. *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). Only if the totality of the circumstances surrounding the interrogation shows both an uncoerced choice and the requisite level of comprehension can a waiver be effective. *Id.; United States v. Hernandez,* 93 F.3d 1493, 1501 (10th Cir.1996).

■ In considering whether a statement is of free will, the courts look to several factors, including: "(1) the characteristics of the defendant: age, education, intelligence, and physical and emotional attributes; (2) the circumstances surrounding the statement, including the length of detention and questioning and the location of questioning; and (3) the tactics, if any, employed by officers. (Citations omitted). In no case, however, is any single factor determinative." *United States v. Chalan,* 812 F.2d 1302, 1307(10th Cir.1987), *cert. denied,* 488 U.S. 983, 109 S.Ct. 534, 102 L.Ed.2d 565 (1988).

■ "[A] defendant's statement that is extracted or induced by threats or promises is involuntary." *Hernandez,* 93 F.3d at 1503 (citing *Hutto v. Ross,* 429

U.S. 28, 30, 97 S.Ct. 202, 50 L.Ed.2d 194 (1976)). "Incriminating statements obtained by government acts, threats, or promises that permit the defendant's will to be overborne are coerced confessions running afoul of the Fifth Amendment...." *Griffin v. Strong,* 983 F.2d 1540, 1543 (10th Cir.1993) (quoting *United States v. Short,* 947 F.2d 1445, 1449 (10th Cir.1991), *cert. denied,* 503 U.S. 989, 112 S.Ct. 1680, 118 L.Ed.2d 397 (1992)). "Coercion may involve psychological threats as well as physical threats." *United States v. Finch,* 998 F.2d 349, 356 (6th Cir.1993).

■ The crucial question in each case is whether the defendant's will was overborne at the time of the confession. *See Lynumn v. State of Illinois,* 372 U.S. 528, 534, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963). A confession "must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence." *Malloy v. Hogan,* 378 U.S. 1, 7, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964).

The sole evidence regarding the giving of *Miranda* warnings and Maio's waiver thereof is the testimony of Trooper Lambert. That undisputed evidence is that Maio was advised of his *Miranda* rights at Troop L headquarters, verbally waived those rights and subsequently answered some questions and refused to answer others. Although testimony established that a report noted that Maio "refused to comment," apparently after being *Mirandized,* Trooper Lambert clarified that this meant that Maio initially remained silent, and not that Maio stated or otherwise indicated his assertion of *Miranda* rights. Trooper Lambert stated that after a period of approximately 10–15 minutes after being *Mirandized,* Maio disavowed any knowledge of the currency found in the saddlebags of the motorcycle, stated that he was

delivering the cycle for a friend, but refused to name any names.

Although Trooper Lambert's testimony regarding Maio's waiver lacked the detail often provided, the court finds no reason not to credit his testimony. The government has met its burden to prove by a preponderance of the evidence that Maio's waiver of rights was voluntary. No evidence of any duress, coercion, or other improper influence has been alleged, let alone shown by the evidence. The court finds that Maio's post-arrest statements were made after defendant was *Mirandized,* and after defendant voluntary and knowingly waived his *Miranda* rights, thus no basis for suppression of Maio's statements has been shown.

IT IS THEREFORE ORDERED that defendant Maio's motion to suppress (Dk.724) is denied.