Robert Lee BALTIMORE, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2002–CA–002304–MR.

Court of Appeals of Kentucky.

Oct. 31, 2003.

Alicia A. Sneed, Lexington, KY, for appellant.

Albert B. Chandler III, Attorney General, Courtney J. Hightower, Assistant Attorney General, Frankfort, KY, for appellee.

Before EMBERTON, Chief Judge; McANULTY, Judge; HUDDLESTON, Senior Judge.[1]

## OPINION

HUDDLESTON, Senior Judge.

Robert Lee Baltimore appeals from a Fayette Circuit Court judgment sentencing him to ten years' imprisonment on a conditional plea of guilty, pursuant to Kentucky Rules of Criminal Procedure (RCr) 8.09, to several counts of fraudulent use of a credit card and being a persistent felony offender in the first degree. Under the conditional guilty plea, Baltimore preserved his right to challenge the denial of his motion to suppress evidence seized by the police during an investigatory stop.

On April 30, 2002, Officer Sean Ray, one of seven members of the West Sector Special Assignment Unit of the Lexington Police Department, received information from Kelly Grandee that several of her credit cards had been stolen from her vehicle when it was broken into while her family was attending a movie the previous Sunday night. Grandee provided Officer Ray with documents of her account activity showing that the stolen credit cards had been used to purchase merchandise between April 28–29, 2002, at various locations including the K–Mart Store on Nicholasville Road, and two Wal–Mart Stores.

---

1. Senior Judge Joseph R. Huddleston sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

Officer Ray contacted those stores and obtained surveillance videotapes of the illegal purchases, but he was unable to develop a specific identification of the black male suspect because of the poor quality of the videotapes.

On May 3, 2002, Mr. Baker, the loss prevention officer at the Nicholasville K–Mart Store, notified Officer Ray at approximately 4:00 p.m. that the same person who had purchased items at the store earlier using Ms. Grandee's credit card was at the store with a receipt seeking to receive a cash refund for return of the merchandise. The loss prevention officer videotaped the suspect's activities using a high quality recorder. When he was told that the store would not refund cash but could only provide a credit to Ms. Grandee's credit card account, the black male suspect decided to retain the merchandise and left on a bicycle before Officer Ray could arrive at the store. A few hours later at approximately 6:30 p.m., Officer Ray retrieved the videotape of this incident, which was of much better quality than the earlier videotapes.

When the rest of the officers in the unit arrived for duty that evening, they viewed the May 3rd K–Mart videotape and discussed the case. They decided to patrol the area surrounding K–Mart in search of the suspect. At approximately 10:10 p.m., Officers A. Cain and Brian Maynard saw a person fitting the description of the suspect riding a bicycle near Lowry Road. They stopped the person, who identified himself as Robert Baltimore, and Officer Maynard notified Officer Ray that they

had stopped the potential suspect. When Officer Ray arrived, he asked for and received from Baltimore voluntary consent to search his person. Officer Ray found a marijuana cigarette in Baltimore's front shirt pocket and Officer Maynard recovered a K–Mart sales receipt from his wallet. The sales receipt dealt with the April purchase of merchandise and the attempted return of that merchandise to K–Mart earlier that day. Baltimore was then arrested for fraudulent use of a credit card and possession of marijuana.

On July 8, 2002, a Fayette County grand jury indicted Baltimore on four felony counts of fraudulent use of a credit card over $100.00,[2] one misdemeanor count of fraudulent use of a credit card under $100.00,[3] one count of criminal possession of a forged instrument in the second degree,[4] one misdemeanor count of possession of marijuana,[5] and being a persistent felony offender in the first degree (PFO I).[6]

On August 9, 2002, Baltimore's attorney orally requested a suppression hearing, which was followed by a written motion to suppress involving the stop and search of Baltimore on May 3rd. On September 19, 2002, the circuit court conducted a suppression hearing with Officers Ray and Maynard as the only witnesses. At the end of the hearing, the court denied the motion to suppress after orally making findings of fact and holding that the police action was supported by reasonable suspicion and probable cause.

---

**2.** Ky.Rev.Stat. (KRS) 434.650.

**3.** KRS 434.650.

**4.** KRS 516.060. The five counts of fraudulent use of a credit card involved purchases using the credit cards stolen from Kelly Grandee. The criminal possession of a forged instrument count involved the cashing of a $268

check in February 2002 drawn on the bank account of a different party apparently unrelated to the credit card offenses.

**5.** KRS 218A.1422.

**6.** KRS 532.080.

Given the circuit court's ruling on the suppression motion, Baltimore decided to enter a conditional plea of guilty pursuant to an agreement with the Commonwealth to three felony counts of fraudulent use of a credit card, the one misdemeanor count of fraudulent use of a credit card, an amended count of criminal possession of a forged instrument in the third degree,[7] and PFO I. The Commonwealth moved to dismiss one count of fraudulent use of a credit card and possession of marijuana. Under the plea agreement, the Commonwealth recommended sentences of two years on one count of fraudulent use of a credit card over $100.00 enhanced to ten years for being a PFO I, one year on each of the two remaining felony counts of fraudulent use of a credit card, twelve months in jail on each of both misdemeanor counts of criminal possession of a forged instrument in the third degree and fraudulent use of a credit card under $100.00, all to run concurrently for a total sentence of ten years. Baltimore reserved his right to appeal the circuit court's ruling on the suppression motion. On October 30, 2002, the circuit court entered a final judgment sentencing Baltimore to serve ten years' imprisonment consistent with the Commonwealth's recommendation. This appeal followed.

There are three types of interaction between police and citizens: consensual encounters, temporary detentions generally referred to as *Terry*[8] stops, and arrests. The protection against search and seizure provided by the Fourth Amendment to the United States Constitution applies only to the latter two types. Generally, under the Fourth Amendment, an official seizure of a person must be supported by probable cause, even if no formal arrest of the person is made.[9] However, there are various narrow exceptions based on the extent and type of intrusion of personal liberty and the government interest involved. In the seminal case of *Terry v. Ohio*,[10] the Supreme Court held that a brief investigative stop, detention and frisk for weapons short of a traditional arrest based on reasonable suspicion does not violate the Fourth Amendment. *Terry* recognized that as an initial matter, there must be a "seizure" before the protections of the Fourth Amendment requiring the lesser standard of reasonable suspicion are triggered. A police officer may approach a person, identify himself as a police officer and ask a few questions without implicating the Fourth Amendment.[11] A "seizure" occurs when the police detain an individual under circumstances where a reasonable person would feel that he or she is not at liberty to leave.[12] Where a

7. KRS 516.070.

8. *See infra* note 10.

9. *See Dunaway v. New York,* 442 U.S. 200, 208, 99 S.Ct. 2248, 2254, 60 L.Ed.2d 824 (1979); *United States v. Saperstein,* 723 F.2d 1221, 1229 (6th Cir.1983).

10. 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

11. *See United States v. Drayton,* 536 U.S. 194, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002); *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *Commonwealth v. Banks,* Ky., 68 S.W.3d 347 (2001).

12. *Terry,* 392 U.S. at 19 n. 16, 88 S.Ct. at 1879 n. 16; *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); *Drayton, supra; Baker v. Commonwealth,* Ky., 5 S.W.3d 142 (1999). A consensual encounter maybe transformed into a seizure implicating the Fourth Amendment when the detainee no longer reasonably feels at liberty to leave. *See, e.g., United States v. Shareef,* 100 F.3d 1491 (10th Cir.1996); *Weaver v. Shadoan,* 340 F.3d 398 (6th Cir. 2003); *United States v. Ushery,* 968 F.2d 575 (6th Cir.1992).

seizure has occurred, "if police have a reasonable suspicion grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony," then they may make a *Terry* stop to investigate that suspicion.[13] Evaluation of the legitimacy of an investigative stop involves a two-part analysis. First, whether there is a proper basis for the stop based on the police officer's awareness of specific and articulable facts giving rise to reasonable suspicion.[14] Second, whether the degree of intrusion was reasonably related in scope to the justification for the stop.[15]

Meanwhile, *Terry* authorized only a limited pat-down search of the person for purposes of uncovering potential weapons regardless of probable cause.[16] The purpose of the limited *Terry* search is not to discover evidence of a crime, but rather to allow the officer to pursue the investigation without fear of violence or physical harm.[17] A warrantless search more extensive or intrusive than a pat-down for weapons is illegal unless it is supported by probable cause or one of the other exceptions such as consensual search, a plain view search, a search incident to an arrest, a search based on exigent circumstances or an inventory search.[18] Probable cause involves whether the known facts provide reasonable grounds or a fair probability that a circumstance exists supported by less than prima facie proof but more than mere suspicion.[19] Probable cause for a search exists when the facts are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found.[20] Similarly, probable cause for ar-

**13.** *United States v. Hensley,* 469 U.S. 221, 229, 105 S.Ct. 675, 680, 83 L.Ed.2d 604 (1985); *Adkins v. Commonwealth,* Ky., 96 S.W.3d 779 (2003). Police may also make a *Terry* stop if they have reasonable suspicion that criminal activity is afoot. *Terry,* 392 U.S. at 30, 88 S.Ct. at 1884–85; *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989).

**14.** *See United States v. Martin,* 289 F.3d 392, 397 (6th Cir.2002)(citing *United States v. Garza,* 10 F.3d 1241, 1245 (6th Cir.1993)); *United States v. Jones,* 269 F.3d 919, 924 (8th Cir.2001).

**15.** *Id.,* See also *United States v. Brignoni–Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *United States v. Bueno,* 21 F.3d 120 (6th Cir.1994); *United States v. Wood,* 106 F.3d 942 (10th Cir.1997); *United States v. Orsolini,* 300 F.3d 724 (6th Cir. 2002).

**16.** *Terry,* 392 U.S. at 27, 88 S.Ct. at 1883; *United States v. Menard,* 95 F.3d 9, 10–11 (8th Cir.1996); *United States v. Casado,* 303 F.3d 440 (2d Cir.2002); *Commonwealth v. Crowder,* Ky., 884 S.W.2d 649, 651 (1994).

**17.** *Commonwealth v. Whitmore,* Ky., 92 S.W.3d 76, 78 (2002)(citing *Minnesota v.*

*Dickerson,* 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993)); *Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972); *United States v. Walker,* 181 F.3d 774 (6th Cir.1999).

**18.** *See, e.g., Colbert v. Commonwealth,* Ky., 43 S.W.3d 777 (2001); *Stewart v. Commonwealth,* Ky.App., 44 S.W.3d 376, 379 (2000); *O'Brien v. City of Grand Rapids,* 23 F.3d 990, 997 (6th Cir.1994); *United States v. Garcia,* 205 F.3d 1182 (9th Cir.2000)(seizure after investigatory stop justified by plain view); *United States v. Felix–Felix,* 275 F.3d 627 (7th Cir.2001)(search justified by consent); *United States v. Jackson,* 300 F.3d 740 (7th Cir. 2002)(search justified as incident to arrest).

**19.** *See, e.g., Smith v. Thornburg,* 136 F.3d 1070, 1074 (6th Cir.1998)(quoting *United States v. Bennett,* 905 F.2d 931, 934 (6th Cir. 1990)); *United States v. Padro,* 52 F.3d 120, 122–23 (6th Cir.1995).

**20.** *Ornelas v. United States,* 517 U.S. 690, 696, 116 S.Ct. 1657, 1661, 134 L.Ed.2d 911 (1996)(citing *Brinegar v. United States,* 338 U.S. 160, 175–176, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949)); *Dunn v. Commonwealth,* Ky.App., 689 S.W.2d 23, 28 (1984).

rest involves reasonable grounds for the belief that the suspect has committed, is committing, or is about to commit an offense.[21] The standard for reasonable suspicion is less demanding than the grounds necessary for probable cause.[22] "Although an officer's reliance on a mere 'hunch' is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." [23]

 Both the reasonable suspicion and probable cause objective standards are flexible concepts to be applied in a commonsense manner based on the totality of the circumstances in each case.[24] In determining the totality of the circumstances, a reviewing court should not view the factors relied upon by the police officer(s) to create reasonable suspicion in isolation but must consider all of the officer(s) observations and give due regard to inferences and deductions drawn by them from their experience and training.[25]

 Kentucky has adopted the standard of review set out by the United States Supreme Court in *Ornelas v. United States.*[26] Under that approach, the decision of the circuit court on a motion to suppress based on an alleged illegal search following a hearing is subject to a two-part analysis. First, factual findings of the court involving historical facts are conclusive if they are not clearly erroneous and are supported by substantial evidence.[27] Second, the ultimate issue of the existence of reasonable suspicion or probable cause is a mixed question of law and fact subject to de novo review.[28] In conducting this analysis, the reviewing court must give due weight to inferences drawn from the facts by the trial court and law enforcement officers and to the circuit court's findings on the officers' credibility.[29]

 In the current case, Baltimore contends that the trial court erred in denying his motion to suppress because his encounter with the police violated the search and seizure provision of the Fourth Amendment and the standards established in *Terry v. Ohio.* More specifically, he maintains that the police did not have reasonable suspicion to support the investigative stop. Baltimore asserts that the items seized in the search of his person should be suppressed under the exclusionary rule as fruit of the poisonous tree.[30] Under the

**21.** *See, e.g., Gerstein v. Pugh,* 420 U.S. 103, 111, 95 S.Ct. 854, 862, 43 L.Ed.2d 54 (1975); *United States v. Caicedo,* 85 F.3d 1184, 1191 (6th Cir.1996); *Eldred v. Commonwealth,* Ky., 906 S.W.2d 694, 705 (1994).

**22.** *Sokolow,* 490 U.S. at 7, 109 S.Ct. at 1585; *Weaver, supra* at 407; *Commonwealth v. Banks,* Ky., 68 S.W.3d 347, 351 (2001).

**23.** *United States v. Arvizu,* 534 U.S. 266, 274, 122 S.Ct. 744, 751, 151 L.Ed.2d 740 (2002) (citations omitted); *Banks, supra.*

**24.** *See, e.g., United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981); *Ornelas,* 517 U.S. at 696, 116 S.Ct. at 1661; *Dunn, supra.*

**25.** *See Arvizu,* 534 U.S. at 273–74, 122 S.Ct. at 750–51; *Cortez,* 449 U.S. at 418, 101 S.Ct.

at 690; *McCurdy v. Montgomery County, Ohio,* 240 F.3d 512, 517 (6th Cir.2001).

**26.** 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). *See Whitmore, supra* at 79.

**27.** *See* 517 U.S. at 699, 116 S.Ct. at 1663; *Whitmore, supra; Banks, supra.*

**28.** *Id. See also Adcock v. Commonwealth,* Ky., 967 S.W.2d 6, 8 (1998); *Stewart,* 44 S.W.3d at 380.

**29.** *Ornelas,* 517 U.S. at 699, 116 S.Ct. at 1663; *Whitmore, supra.*

**30.** *See, e.g., United States v. Miller,* 84 F.3d 1244, 1250 (10th Cir.1996); *Northrop v. Trippett,* 265 F.3d 372, 383 (6th Cir.2001); *United States v. Betemit,* 899 F.Supp. 255, 263 (E.D.Va.1995).

fruit of the poisonous tree doctrine, evidence derived from the exploitation of an illegal seizure must be suppressed, unless the government shows that there was a break in the chain of events sufficient to refute the inference that the evidence was a product of the Fourth Amendment violation.[31]

 In the present case, Baltimore consented to the search of his person and consent to search may—but not necessarily—dissipate the taint of an illegal detention.[32] The admissibility of the challenged evidence involves a two-part test: (1) whether the consent was voluntary and (2) whether the consent was an independent act of free will.[33] "Voluntariness focuses on coercion, and the second prong considers the causal connection between the 'consent' and the prior constitutional violation."[34] In addition, Officer Raymond testified that when he arrived, he positively identified Baltimore as the suspect based on his facial appearance from the K–Mart video surveillance tape.[35] This fact provided probable cause to support an arrest of Baltimore and a search of his person incident to an arrest for items possibly related to the offense, such as the stolen credit cards or purchase receipts.[36] Ac-

**31.** *See, e.g., Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963); *United States v. Rivas,* 157 F.3d 364, 368 (5th Cir.1998).

**32.** *See United States v. Santa,* 236 F.3d 662, 676 (11th Cir.2000); *United States v. Beason,* 220 F.3d 964, 967 (8th Cir.2000). *United States v. Hernandez,* 279 F.3d 302, 307 (5th Cir.2002).

**33.** *See Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *United States v. Chavez–Villarreal,* 3 F.3d 124, 127 (5th Cir.1993); *United States v. Richardson,* 949 F.2d 851, 858 (6th Cir.1991); *Santa, supra; United States v. Goodrich,* 183 F.Supp.2d 135, 145 (D.Mass.2001).

**34.** *United States v. Dortch,* 199 F.3d 193, 201 (5th Cir.1999). *See also Chavez–Villarreal, supra* at 127; *United States v. Portillo–Aguirre,* 311 F.3d 647 (5th Cir.2002). Factors relevant to voluntariness of consent include: (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation; (4) the defendant's awareness of his right to refuse consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found. *Portillo–Aguirre, supra* at 658–59 (citing *United States v. Shabazz,* 993 F.2d 431, 438 (5th Cir.1993)); *United States v. Boone,* 245 F.3d 352, 361–62 (4th Cir.2001); *United States v. Purcell,* 236 F.3d 1274, 1281 (11th Cir.2001). Factors relevant to whether consent was an independent act of free will include: (1) the temporal proximity of the illegal conduct and the consent; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the initial misconduct. *See United States v. Becker,* 333 F.3d 858, 861–62 (8th Cir.2003); *United States v. Santiago,* 310 F.3d 336, 343 (5th Cir.2002); *United States v. Pedroza,* 269 F.3d 821, 827 (7th Cir.2001).

**35.** Officer Maynard testified that he was unable to identify Baltimore.

**36.** Police may search a person fully and the area under his immediate control as a search incident to arrest while a search based on reasonable suspicion is limited to a pat-down search for weapons. *See, e.g., United States v. Childs,* 277 F.3d 947 (7th Cir.2002). A search incident to arrest includes not only the purpose of safety of the police but also the preservation of evidence. *See, e.g., United States v. Robinson,* 414 U.S. 218, 234, 94 S.Ct. 467, 476, 38 L.Ed.2d 427 (1973); *United States v. McKissick,* 204 F.3d 1282, 1296 (10th Cir. 2000). Moreover, the fact that Baltimore was not technically placed under arrest prior to the search is not determinative of its validity. A warrantless search preceding an arrest is a valid search incident to arrest as long as a legitimate basis existed before the search and the arrest followed shortly after the search. *See, e.g., Rawlings v. Kentucky,* 448 U.S. 98, 111, 100 S.Ct. 2556, 2564, 65 L.Ed.2d 633 (1980); *United States v. Goddard,* 312 F.3d 1360, 1364 (11th Cir.2002); *United States v. Bizier,* 111 F.3d 214, 217 (1st Cir.1997).

cordingly, in addition to the consent, the search of Baltimore's person was justified based on a search incident to arrest.[37] Baltimore has not challenged the validity of his consent to search or his arrest, but the Commonwealth has not argued that the consent or arrest cured the taint of any alleged illegal detention and the circuit court made no rulings on those issues. As a result, we will address only the question of the validity of the investigative stop.

During the suppression hearing, the police officers testified that they developed a profile of the suspect involved in the fraudulent use of Grandee's credit cards through interviews with store employees and video surveillance tapes of the suspect. The circuit court credited the police officers' testimony in finding that they developed a description of the suspect as a black male of medium build with braided hair wearing a gray Nike jacket with a black strip across the back who had been seen riding a bicycle at approximately 4:00 p.m. on May 3rd. The videotapes showed the same person who had used one of the stolen credit cards had returned to K–Mart on May 3rd in an unsuccessful attempt to obtain cash for merchandise purchased at that store a few days earlier.

Baltimore maintains that the description of the suspect relied upon by Officer Maynard for his action was not sufficiently distinctive to justify the investigative stop. He asserts that a large number of black males have braided hair and medium physical builds. Baltimore also postulates that thousands, perhaps a million gray Nike jackets with a black strip probably have been produced. He states that K–Mart's loss prevention officer did not give the police a specific description of the bicycle that the suspect was riding and that riding a bicycle itself is not suspicious.

Baltimore's argument constitutes a faulty analysis of the *Terry* standard. In the recent case of *United States v. Arvizu*,[38] the Supreme Court reiterated that in determining whether reasonable suspicion exists, reviewing courts "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing."[39] The Court specifically rejected Baltimore's atomistic approach focusing on individual factors in isolation and indicated that a determination of reasonable suspicion "need not rule out the possibility of innocent conduct."[40]

The [lower] court's evaluation and rejection of seven of the listed factors in isolation from each other does not take into account the "totality of the circumstances," as our cases have understood that phrase. The court appeared to believe that each observation by [Border Patrol Agent] Stoddard that was by itself readily susceptible to an innocent explanation was entitled to "no weight." See [*United States v. Arvizu*] 232 F.3d [1241] at 1249–1251 [ (9th Cir.2000) ]. *Terry*, however, precludes this sort of divide-and-conquer analysis. The officer in *Terry* observed the petitioner and his companions repeatedly walk back and forth, look into a store window, and confer with one another. Although each of

---

**37.** We note that a valid arrest may constitute an intervening event that cures the taint of an illegal detention sufficient to rebut the application of the exclusionary rule to evidence recovered in a search incident to an arrest. *See, e. g., United States v. Green*, 111 F.3d 515 (7th Cir.1997).

**38.** 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002).

**39.** *Id.* at 273, 122 S.Ct. at 750 (citations omitted).

**40.** *Id.* at 277, 122 S.Ct. at 753.

the series of acts "perhaps innocent in itself," we held that, taken together, they "warranted further investigation." 392 U.S., at 22, 88 S.Ct. 1868. *See also Sokolow, supra* [490 U.S.] at 9, 109 S.Ct. 1581 [104 L.Ed.2d 1 (1989) ](holding that factors which by themselves were "quite consistent with innocent travel" collectively amounted to reasonable suspicion).[41]

The Court further emphasized that the totality of the circumstances analysis "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.' "[42]

▬▬▬ Applying the analysis described in *Arvizu*, we agree with the circuit court that Officer Maynard had reasonable suspicion to stop Baltimore. The police officers testified that they conducted the patrol search in the area near the K–Mart store based on their educated belief that the suspect may live near or frequent that area. The physical description and clothing of the suspect included several differentiating characteristics. Baltimore's appearance was consistent with all of the physical characteristics, he was in the target area and he was riding a bicycle, which was consistent with the suspect's mode of transportation a few hours earlier. Viewing these factors cumulatively rather than in isolation, we hold that the police presented sufficient specific and articulable facts to constitute reasonable suspicion to conduct an investigatory stop into Baltimore's potential involvement in the credit card offenses. Officer Maynard testified that he merely asked Baltimore his name and to wait until Officer Raymond could arrive at the location. He stated that Baltimore was cooperative and Officer Raymond arrived in approximately 10–15 minutes. Although Baltimore does not challenge the degree of the intrusion, the scope of the detention was reasonable.[43]

In conclusion, we hold that the circuit court's factual findings were not clearly erroneous and its legal conclusion that the investigatory stop was supported by reasonable suspicion was correct. Consequently, the court did not err in denying Baltimore's motion to suppress.

The judgment is affirmed.

ALL CONCUR.

---

**41.** *Id.* at 274, 122 S.Ct. at 751. *See also United States v. Robertson,* 305 F.3d 164 (3rd Cir.2002).

**42.** *Id.* at 273, 122 S.Ct. at 750–51. *See also United States v. Hernandez,* 313 F.3d 1206 (9th Cir.2002).

**43.** *See, e.g., United States v. Sharpe,* 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985)(stating there is no rigid time limit while finding 20 minute detention waiting for another police officer to arrive was not unreasonable); *Orsolini, supra* (finding 35 minute detention waiting for arrival of drug canine unit reasonable); *United States v. Sturgis,* 238 F.3d 956 (8th Cir.2001)(2 hour waiting period); *United States v. Villa–Chaparro,* 115 F.3d 797 (10th Cir.1997)(40 minute waiting period); *United States v. Maio,* 182 F.Supp.2d 1025 (D.Kan.2001)(15–30 minute waiting period). See also *United States v. Hernandez-Hernandez,* 327 F.3d 703, 706 (8th Cir.2003)(police may ask moderate number of questions to determine person's identity and try to obtain information confirming or dispelling the officer's suspicions); *United States v. Swanson,* 341 F.3d 524, 528 (6th Cir. 2003)(same).