**Michael Lamont FLETCHER, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2004–CA–002181–MR.

Court of Appeals of Kentucky.

Nov. 4, 2005.

Discretionary Review Denied by Supreme Court Feb. 15, 2006.

---

V. Gene Lewter, Lexington, KY, for Appellant.

Gregory D. Stumbo, Attorney General of Kentucky, James C. Shackelford, Assistant Attorney General, Frankfort, KY, for Appellee.

Before COMBS, Chief Judge; McANULTY, Judge; PAISLEY, Senior Judge.[1]

## OPINION

COMBS, Chief Judge.

Michael Lamont Fletcher appeals from a Fayette Circuit Court judgment sentencing him to a term of one year in prison, probated for three years. Fletcher was arrested after a stop and a pat-down search of his person that revealed a .38 caliber handgun. A subsequent search conducted incident to his arrest turned up nearly two grams of crack cocaine and drug paraphernalia. Fletcher entered a conditional plea of guilty to the resulting charges pursuant to the provisions of Kentucky Rules of Criminal Procedure (RCr) 8.09. Under his conditional guilty plea, Fletcher reserved the right to challenge the trial court's denial of his motion to suppress the evidence recovered during the two separate searches. We affirm.

The sole issue before us is whether the trial court erred by concluding that the

---

1. Senior Judge Lewis G. Paisley sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

searches and seizure were lawful. The provisions of RCr 9.78 govern the procedure for conducting suppression hearings and establish the standard for our review of the trial court's decision on the motion.

We conduct a *de novo* review to determine whether the decision is correct as a matter of law, but we defer to the trial court's findings of fact if they are supported by substantial evidence. *Commonwealth v. Whitmore*, 92 S.W.3d 76 (Ky. 2002). Inherent in our review is the reality that police officers may draw inferences of illegal activity from facts that may appear innocent to a lay person. Accordingly, we must give due deference to the trial court in assessing the credibility of the officers and the reasonableness of their inferences. *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

Officer Franz Wolff of the Lexington–Fayette Urban County Government, Division of Police, testified at the suppression hearing regarding the circumstances surrounding his encounter with Fletcher. Officer Wolff recounted that during the early morning hours of July 10, 2004, he and Officer Falconbury began a surveillance of a house located on Wilgus Avenue in Lexington, a high-crime area where they suspected that drug activity was occurring. The officers were on foot and were positioned a short distance from the house under surveillance. They observed a great number of people walking back and forth between the house and a large conversion van parked across the street.

After the officers had observed the house and Fletcher for approximately ten minutes, Fletcher began walking toward the officers' hidden location. The officers emerged and inquired about Fletcher's intentions. They also asked him for his name, date of birth, and Social Security number. As Officer Wolff radioed Fletch-

er's information through police channels for confirmation, Officer Falconbury stepped into view of the people congregated at the house. They dissipated at once.

As Officer Wolff watched people fleeing from the scene, he asked Fletcher to sit down on the ground while they awaited information to confirm Fletcher's identity. Radio communication revealed that the information provided by Fletcher was inconsistent with the information that he had relayed to Officer Wolff, and Officer Wolff asked him once again to provide his name and Social Security number. After Fletcher gave a second Social Security number, Officer Wolff decided to conduct a pat-down search for weapons. He asked Fletcher to stand up and turn around. Wolff then inquired, "Do you have anything on you I need to know about?" Fletcher indicated to Officer Wolff that he had a pistol in his back pocket. Fletcher was handcuffed, a loaded pistol was recovered, and Fletcher was placed under arrest for carrying a concealed deadly weapon. During a search conducted incident to the arrest, Officer Wolff recovered cocaine and drug paraphernalia from Fletcher.

After he was arraigned on several charges, Fletcher moved the trial court to suppress the incriminating evidence as the fruits of an illegal stop and search. The trial court conducted a hearing and denied the motion, finding that the police officers had articulated their reasonable suspicion that illegal activity was occurring sufficient to justify the stop. Fletcher was sentenced following entry of his conditional guilty plea, and this appeal followed.

On appeal, Fletcher claims that the initial stop and search were conducted in violation of his Fourth Amendment right to be free from unreasonable searches and seizures. Fletcher contends that at the time that he was approached, Officer Wolff did not have a reasonable, articulable basis

for believing that he either had committed or was in the process of committing a crime. Thus, the stop and search were improper. We disagree.

As we observed in *Baltimore v. Commonwealth,* 119 S.W.3d 532, 537 (2003), there are three types of interaction between the police and citizens: consensual encounters, temporary detentions (generally referred to as *Terry* stops), and arrests. The prohibition against unreasonable search and seizure provided by the Fourth and Fourteenth Amendments to the United States Constitution applies only to *Terry* stops and arrests. *Id.* The Fourth Amendment dictates that an official detention of a person must be supported by probable cause—even if no formal arrest of the person is made. *Id.* However, the courts have recognized several limited exceptions based upon the nature and extent of the intrusion and the government interest involved. *Id.*

In *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court held that a brief investigative stop, detention, and frisk for weapons do not violate the Fourth Amendment as long as the initial stop was supported by **reasonable suspicion,** a far lighter standard than probable cause. *Id. Terry* recognized that there must be an actual "seizure" before the protections of the Fourth Amendment are triggered. *Id.* Pursuant to *Terry,* a police officer may approach a person, identify himself as a police officer, and ask a few questions without implicating the Fourth Amendment. *Id.* A "seizure" for Fourth Amendment purposes occurs only when an individual is detained under circumstances that would induce a reasonable person to believe that he or she is not at liberty to leave. *Id.* Police may make a *Terry* stop for investigative purposes if they have "a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony . . . ." *Id.* citing *United States v. Hensley,* 469 U.S. 221, 229, 105 S.Ct. 675, 680, 83 L.Ed.2d 604 (1985).

In this case, Fletcher contends that the trial court erred in denying his motion to suppress the evidence since an improper seizure had already occurred before Officer Wolff learned that Fletcher had given misinformation about his true identity. When Officer Wolff instructed him to sit on the ground, Fletcher argues that he no longer felt free to leave and that he was effectively "seized" by the officer. He argues that this seizure was not supported by any reasonable suspicion.

However, Fletcher's initial interaction with Officer Wolff did not implicate the Fourth Amendment. Under the circumstances, Officer Wolff was justified in approaching Fletcher, in asking him to identify himself, and in asking a few questions. Fletcher was not seized at that point.

Even if Fletcher were deemed to have been seized when Officer Wolff asked him to sit down, this brief detention was amply supported by reasonable suspicion. In light of the totality of the circumstances as observed by the officers, including the immediate flight of Fletcher's associates at the mere sight of Officer Falconbury, Officer Wolff was justified in deciding to launch a full-scale *Terry* stop and in undertaking additional investigation. Officer Wolff assuredly had a reasonable, articulable suspicion that criminal activity was afoot. Moreover, the slight intrusion was reasonably related in scope to the justification for the stop and was not unnecessarily prolonged. Finally, the limited pat-down search that yielded the handgun (which Fletcher admitted having prior to being searched) was wholly proper and served as

a legitimate basis for the arrest and the subsequent search conducted incident to that arrest.

The factual findings of the trial court were supported by substantial evidence, and it correctly concluded as a matter of law that the investigatory stop was supported by reasonable suspicion. We are persuaded that the trial court did not err by denying Fletcher's motion to suppress the incriminating evidence.

The judgment of the Fayette Circuit Court is affirmed.

ALL CONCUR.