RENDERED: NOVEMBER 3, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0849-MR

ADAM ENGLAND          APPELLANT

               APPEAL FROM BARREN CIRCUIT COURT
v.            HONORABLE JOHN T. ALEXANDER, JUDGE
               ACTION NO. 21-CR-00244

COMMONWEALTH OF KENTUCKY          APPELLEE

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: DIXON, GOODWINE, AND TAYLOR, JUDGES.

GOODWINE, JUDGE: Adam England ("England") appeals the July 12, 2022 judgment of the Barren Circuit Court sentencing him to five years' imprisonment for several drug-related offenses. Pursuant to his conditional guilty plea, he also appeals the March 3, 2022 order denying his motion to suppress evidence. After careful review, we reverse and remand.

On March 21, 2021, the Barren County Detention Center staff received a phone call from an anonymous individual stating that a "male subject in

a red F-150 truck was sitting in the parking lot [and] in possession of illegal drugs." Video Record ("VR") at February 3, 2022, 2:27:57-28:07. Jail staff reported this to Glasgow Police Officer Dubarry. The caller did not explain how he or she knew this information. Before Officer Dubarry arrived at the jail, he received a second phone call from jail staff informing him a man had entered the jail and appeared to be under the influence.

Shortly thereafter, Officer Dubarry arrived at the jail and located a red Ford F-150 truck. He checked its registration and identified England as the owner. Officer Dubarry approached the truck and observed a man sitting in the driver's seat. He initiated contact and confirmed England's identity. He proceeded to question England about the anonymous tip. England became "defensive" and was "uncooperative" when Officer Dubarry requested to search the vehicle. *Id.* at 2:28:47-50. Officer Dubarry described England as "appear[ing] to have kind of a heightened state of senses." *Id.* at 2:33:48-53. He concluded England did not appear to be intoxicated.

When England did not consent to the search, Officer Dubarry requested he exit the truck. England cooperated. Officer Dubarry then conducted a pat down and, finding nothing on England's person, instructed him to sit on the sidewalk so that he could deploy his canine to conduct a sniff of the truck. Officer Dubarry retrieved the dog and walked it around the truck once or twice. The dog

alerted at the driver's side by jumping onto the side of the truck and sticking his nose in the open window.

Based on the dog's alert, Officer Dubarry searched England's truck and discovered various controlled substances, paraphernalia, and cash. England was arrested and charged with trafficking in a controlled substance (cocaine) in the first degree,[1] trafficking in a controlled substance (fentanyl) in the first degree,[2] possession of a controlled substance (dilaudid) in the first degree,[3] trafficking in marijuana,[4] possession of a controlled substance (buprenorphine),[5] possession of drug paraphernalia,[6] and possession of marijuana.[7]

England moved to suppress all evidence discovered in his truck on grounds that the search and seizure violated his Fourth Amendment rights. The trial court denied the motion after a hearing. England then entered a conditional guilty plea and was sentenced to five years' incarceration. This appeal followed.

---

[1] Kentucky Revised Statutes (KRS) 218A.1412(1)(e), a Class D felony.

[2] KRS 218A.1412(1)(d), a Class C felony.

[3] KRS 218A.1415(1), a Class D felony.

[4] KRS 218A.1421(2), a Class A misdemeanor.

[5] KRS 218A.1416(1), a Class A misdemeanor.

[6] KRS 218A.500(2), a Class A misdemeanor.

[7] KRS 218A.1422(1), a Class B misdemeanor.

Review of a trial court's ruling on a motion to suppress is conducted in two parts. First, we must determine if the court's findings of fact are supported by substantial evidence. *Commonwealth v. Lane*, 553 S.W.3d 203, 205 (Ky. 2018) (citation omitted). We will then review the court's determinations of reasonable suspicions and probable cause *de novo*. *Gasaway v. Commonwealth*, 671 S.W.3d 298, 316 (Ky. 2023) (citation omitted).

On appeal, England argues that Officer Dubarry: (1) lacked reasonable suspicion to detain him; (2) unreasonably prolonged the stop to conduct the dog sniff; and (3) unlawfully commanded the dog to enter the truck during its sniff.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. CONST. amend. IV. An officer may approach a person and engage them in conversation without implicating the Fourth Amendment. *See Baltimore v. Commonwealth*, 119 S.W.3d 532, 537 (Ky. App. 2003) (citations omitted).

However, a person's constitutional rights are implicated once he has been detained by police. *Id.* Under *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), an officer may briefly detain someone only where he "has a reasonable suspicion based upon objective, articulable facts that criminal activity is

afoot." *Strange v. Commonwealth*, 269 S.W.3d 847, 850 (Ky. 2008) (citations omitted). Reasonable, articulable suspicion requires that the officer actually articulate his suspicion. *Commonwealth v. Clayborne*, 635 S.W.3d 818, 830 (Ky. 2021). If it is later determined an officer did not have the requisite basis for his suspicion when he detained an individual, any evidence discovered during the resulting search must be excluded as "fruit of the poisonous tree." *See Easterling v. Commonwealth*, 580 S.W.3d 496, 505-06 (Ky. 2019) (citations omitted).

The trial court is correct that Officer Dubarry did not detain England simply by approaching the truck, verifying his identity, and asking him about the allegations made by the anonymous caller. However, after England refused to consent to a search of the truck and Officer Dubarry ordered him to get out of the vehicle, he was detained.[8] The trial court found Officer Dubarry had reasonable and articulable suspicion to justify the detention because

> [he] had received information from the jail staff that stated England would be in a red F-150, he would be in the jail parking lot, and he would have illegal substances in his vehicle. He was also informed that England seemed to be intoxicated. Dubarry located the red F-150 in the jail parking lot, identified the driver as [] England, spoke with him about the complaint, and suspected some level of intoxication.

---

[8] The Commonwealth concedes England was detained when he exited the truck. Appellee Brief at 4.

Record ("R.") at 133-34.  However, Officer Dubarry's own testimony refutes the court's finding that he suspected England was intoxicated.  Based upon his own observations, Officer Dubarry concluded England did not appear intoxicated.[9]

Otherwise, Officer Dubarry relied on information from the anonymous caller to form the basis for his suspicion.  Despite listing the contents of the anonymous tip as justification for finding Officer Dubarry's suspicion reasonable, the trial court declined to consider precedent regarding anonymous tips.  Instead, the court found case law pertaining to anonymous tips did not apply here because "this case did not involve a traffic stop[.]" *Id.* at 131.  This is an incorrect interpretation of the law.

Considering the totality of the circumstances, reasonable suspicion must be predicated on both the quantity – the content of information possessed by the officer – and quality, or the reliability of such information.  *Alabama v. White*, 496 U.S. 325, 330, 110 S. Ct. 2412, 2416, 110 L. Ed. 2d 301 (1990).  The reliability of information is called into question when an officer uses an anonymous tip to form the basis for his suspicion.  This is because an anonymous tip generally does not demonstrate the "informant's basis of knowledge or

_____

[9] In testifying that England did not appear intoxicated, Officer Dubarry described him as having a "kind of heightened state of senses" but provided no further explanation of England's appearance or behavior.  As we cannot discern the meaning of this statement, we cannot say it is an articulable fact upon which reasonable suspicion can be based.

-6-

veracity[.]" *Id.* at 329, 110 S. Ct. at 2415 (citation omitted). An officer may only rely upon such a tip if it is "suitably corroborated." *Florida v. J.L.*, 529 U.S. 266, 270, 120 S. Ct. 1375, 1378, 146 L. Ed. 2d 254 (2000) (citation omitted). "[W]here [the] tip describes a person previously unknown to the police who is allegedly engaging in criminal activity, the corroboration usually comes from either independent police observations or internal predictive components." *Commonwealth v. Morgan*, 248 S.W.3d 538, 541 (Ky. 2008) (citation omitted).

This matter is comparable to the facts of *J.L.* Therein, law enforcement received an anonymous tip stating, "a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun." *J.L.*, 529 U.S. at 268, 120 S. Ct. at 1377. There was no audio recording of the tip, and nothing was known about the caller. *Id.* Officers went to the bus stop and observed a young black man wearing a plaid shirt, later identified as J.L. *Id.* Having no reason, other than the tip, to suspect criminal activity, the officers approached J.L., frisked him, and discovered a gun on his person. *Id.* J.L. was arrested and charged with carrying a concealed firearm without a license and possessing a firearm while under the age of 18. *Id.* at 269, 120 S. Ct. at 1377.

The Supreme Court of the United States affirmed exclusion of the gun because of the officers' reliance on the anonymous tip. *Id.* at 274, 120 S. Ct. at 1380. The Court held the case lacked even a moderate indicium of reliability

because the anonymous tip contained no predictive information, leaving officers with no way to test the caller's knowledge or truthfulness. *Id.* at 271, 120 S. Ct. at 1379. The fact that the allegation turned out to be correct "does not suggest that the officers, prior to the frisks, had a reasonable basis" for suspecting J.L. was concealing a gun. *Id.* Officers proceeded with only a "bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L." *Id.*

Officer Dubarry proceeded in a similar fashion. He relied on an unrecorded, anonymous tip stating a man was in the jail parking lot in a red F-150 and possessed illegal drugs. The caller did not identify England by name and there is no evidence in the record indicating England was previously known to Officer Dubarry. The caller gave no reason as to why he or she had knowledge of the alleged illegal drugs or England's affairs more generally. The caller also did not make predictions upon which Officer Dubarry could test his or her knowledge or veracity. This clearly does not prove reliability to the standard necessary to make Officer Dubarry's suspicion reasonable. The fact that drugs were ultimately found in England's truck does not prove Officer Dubarry had reasonable suspicion to detain him from the outset.

Officer Dubarry engaged in some investigation beyond what was conducted by the officers in *J.L.* He approached the truck matching the caller's

description and engaged England in a brief conversation. His investigation showed England was not intoxicated, refuting information provided by the jail staff and providing no basis for his suspicion. Beyond the anonymous tip, Officer Dubarry could only articulate that England became defensive when asked about the caller's allegations and refused to consent to a search of his truck.[10]

Based upon the totality of the circumstances, Officer Dubarry did not have a reasonable suspicion of criminal activity, and, as a result, his search and seizure of England were illegal. Because all evidence discovered in the truck is the fruit of the poisonous tree, it must be excluded. As the above analysis determines the suppression issue, we need not address England's remaining arguments.

Based on the foregoing, we reverse the March 30, 2022 order of the Barren Circuit Court and remand this matter for further proceedings consistent with this Opinion.

ALL CONCUR.

---

[10] No person may be compelled to consent to a warrantless search of his vehicle. *See Hampton v. Commonwealth*, 231 S.W.3d 740, 749 (Ky. 2007) (citation omitted). Refusal to consent to a search cannot be used as the basis for reasonable suspicion. *Frazier v. Commonwealth*, 406 S.W.3d 448, 455 (Ky. 2013) (footnote omitted).

BRIEFS FOR APPELLANT:

Kayla D. Deatherage
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Melissa A. Pile
Assistant Attorney General
Frankfort, Kentucky